PEOPLE v. ZIMMERMAN.

OPINION OF THE COURT.

1. EVIDENCE—EXPERTS—OPINIONS.
   Expert opinion is generally admissible, when the proper foundation has been prepared, to assist the jury in understanding and interpreting relevant facts or circumstances peculiar to the particular case which could not be readily evaluated by the inexperienced layman.

2. SAME—EXPERTS—NON-EYEWITNESS—OPINION—SPEED.
   Non-eyewitness expert opinion on issue of speed of vehicle in criminal prosecutions should be admissible whenever speed is

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Expert and Opinion Evidence § 16.
[2, 10, 14] 31 Am Jur 2d, Expert and Opinion Evidence § 157.
[3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 146–148.
[4, 8, 9] 5 Am Jur 2d, Appeal and Error § 545.
[5–7] 53 Am Jur, Trial §§ 458, 459, 480.
[11, 12] 53 Am Jur, Trial §§ 135, 143.
[13] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 283, 292.

a material factor to case being tried even as to the ultimate issue where the jury, because of its inexperience, would require it to effectively interpret complicated facts in issue, and where the expert is competent, has conducted scientifically recognized tests based on facts presented, and does not invade the province of the jury by testifying as to cause of the accident or liability therefor.

3. SAME—NEGLIGENCE—OPINION AS TO CAUSATION.

Opinion of causation in negligence cases, whether offered by experts or lay witnesses, should be excluded where the subject matter of the inquiry is of such a character that it may be presumed to lie within the ordinary experience.

4. APPEAL AND ERROR—PRESERVING ERROR—RECORD ON APPEAL.

The Court of Appeals is unable to determine that error of trial court in excluding opinion testimony of expert witness as to speed of vehicles in trial for negligent homicide was reversible error where the record shows that after trial court's initial ruling excluding the opinion, defense counsel was given opportunity to find authority for its admission, but that after a recess and extended discussion off the record defense counsel went on with another witness, without further reference to the opinion testimony, and the record does not show that the opinion was necessary to the defense (CL 1948, § 750.324).

5. CRIMINAL LAW—FAIR TRIAL—REMARKS BY CODEFENDANT COUNSEL.

Reference, during cross-examination of defendant's eyewitness by codefendant's counsel, to pending civil litigation, to an investigation by insurance company, and to wrongdoing of the insurance company and its attorneys in dealing with the eyewitness *held,* not to deny defendant the right to fair trial.

6. APPEAL AND ERROR—CRIMINAL LAW—INSURANCE.

Reference to "insurance" in criminal trial for negligent homicide arising out of accident was not so prejudicial that the mere mention of it compels new trial where damages were not an issue.

7. SAME—REVERSIBLE ERROR.

Colloquies by counsel for codefendant in trial for negligent homicide which were not conducive to exemplary trial advocacy *held,* not injurious or prejudicial to defendant, considering their limited occurrence in a prolonged trial.

DISSENTING OPINION.
LESINSKI, C. J.

8. APPEAL AND ERROR—REVIEW—ISSUES NOT PRESERVED BELOW.
   *Appellate courts generally will not review matters on appeal which have not been properly preserved below, but they do not hesitate to do so if failure to review the issue could result in a miscarriage of justice.*

9. SAME—REVIEW—ISSUES NOT PRESERVED—PRINCIPLE.
   *The rule that error not properly preserved will not be reviewed on appeal is primarily intended to protect the trial and avoid unnecessary new trial by calling the error to the attention of trial judge so to correct it during trial.*

10. EVIDENCE—EXPERT—NON-EYEWITNESS—OPINION.
    *Failure of defense attorney or trial court to find law which would have demonstrated defendant's right, in trial for negligent homicide, to testimony of a non-eyewitness expert of his opinion as to speed of codefendant's vehicle using length of skid marks, condition of pavement, weight of vehicles, weight of defendant's oil tank cargo on his truck, and fact that impact of collision dislodged the oil tank onto the street does not alter defendant's right to the testimony if it was in order (CL 1948, § 750.324).*

11. TRIAL—FAILURE TO OBJECT—WAIVER.
    *Generally, failure to object to a ruling of a trial judge is an acquiescence or waiver.*

12. SAME—FAILURE TO OBJECT—WAIVER.
    *Failure of defendant to object to refusal of court to allow non-eyewitness expert to give his opinion of speed of codefendant's car in trial of defendant for negligent homicide was not a waiver and the issue was preserved for appeal where trial judge and counsel had conversations off the record and inferentially the trial judge affirmed his refusal to allow the expert witnesses' testimony off the record but the defense attorney did not register his objection on the record (CL 1948, § 750.324).*

13. EVIDENCE—SPEED—NEGLIGENT HOMICIDE.
    *The speed of codefendant's car is of primary importance to determine whether defendant acted negligently under the traffic conditions as they existed in trial of defendant for negligent homicide resulting from accident where he turned left in front of codefendant's oncoming car; the point of travel and speed of codefendant would be indicative of what*

defendant observed or should have observed when he formed his judgment to make his turn (CL 1948, § 750.324).

14. SAME—NEGLIGENT HOMICIDE—OPINION—ADMISSIBILITY.
  Use of expert witnesses' testimony as to speed of vehicles by defendant in trial for negligent homicide is proper and should be allowed, provided all the facts that are necessary are established and a proper foundation is laid (CL 1948, § 750.324).

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division, Murphy (George T.), J. Submitted Division 1 December 5, 1967, at Detroit. (Docket No. 1,061.)   Decided June 28, 1968. Rehearing denied September 18, 1968. Leave to appeal granted December 11, 1968. See 381 Mich 791.

Roy Zimmerman was convicted of negligent homicide. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Perlman & Garber,* for defendant.

FITZGERALD, J. Defendant-appellant was driving a truck south on Greenfield avenue. He attempted to turn left into a driveway on Greenfield but collided with a car driven by Abraham Mukalla. A passenger in the car was killed. Defendant was tried with Mr. Mukalla on a charge of negligent homicide,* was convicted by a jury in the recorder's court of the city of Detroit, and now appeals that verdict to this Court.

Two issues are derived from the trial proceedings. Defendant called Mr. Billings, as an expert mechan-

---

* CL 1948, § 750.324 (Stat Ann 1968 Cum Supp § 28.556).

ical and traffic accident reconstruction engineer, to testify as to his opinion of the speed of defendant Mukalla's vehicle at the time of the accident. Mr. Billings did not see the accident, but he had measured skid marks, noted the weights and load weights of the vehicles, their relative positions, and the condition of the pavement, intending to use this information as the basis for his opinion.

We must consider whether this expert witness may give his opinion as to speed of a vehicle where he has conducted several tests which form the basis of that opinion, and also inquire as to whether speed was material to the issue being tried in this case, *i.e.*, defendant's negligence.

Defendant was charged with negligence in making a left turn in front of Mr. Mukalla's automobile. Mr. Billings was called as an expert by defendant to show that Mr. Mukalla was driving at a high rate of speed when he collided with defendant who was then in the process of turning.

Expert opinion is generally admissible, when a proper foundation has been prepared, to assist the jury in understanding and interpreting those relevant facts or circumstances peculiar to the particular case which could not be readily evaluated by the inexperienced layman. See *Dudek* v. *Popp* (1964), 373 Mich 300. The facts for consideration in the present case, as known to the jury and evaluated by Mr. Billings, include the length of the skid marks (69 feet), the condition of the pavement (dry), the weight of both vehicles (defendant's truck, 10,510 lbs., empty; Mr. Mukalla's automobile, 3,801 lbs.), the additional weight of the defendant's oil tank (approximately 4,500 lbs.) and the fact that the oil tank was dislodged and fell into the street as a result of the accident.

There are no Michigan decisions directly considering the allowance or denial of non-eyewitness expert opinion on the issue of speed in criminal prosecutions, but we are not constrained to state that, thus, such testimony is *never* admissible in criminal cases. Rather, we believe that it should be admissible whenever speed is a material factor to the case being tried even as to the ultimate issue (GCR 1963, 605) where the jury, because of its inexperience, would require it to effectively interpret complicated facts in issue, and where the expert is competent, has conducted scientifically recognized tests based on the facts presented, and does not invade the province of the jury by testifying as to the cause of the accident or liability therefor.

Our willingness to accept such expert opinion evidence as to speed when it is properly presented is reinforced by reference to a number of sources: See 2 Wharton's Criminal Evidence (12th ed), § 553, p 416; 9C Blashfield, Cyclopedia of Automobile Law & Practice, § 6231, p 382; and by reference to the Michigan law applicable to civil cases. See *Dudek* v. *Popp, supra;* but see *Washburn* v. *Lucas* (1964), 373 Mich 610, and cases cited therein for suggested restrictions on expert opinion evidence as to causation made by an investigating officer.

There is no question as to the competence of Mr. Billings to testify as an expert witness on the issue of speed. However, we cannot reach the problem of whether this is *necessary* testimony, given the facts as presented to the jury for their interpretation, and noting that the relevant issue was the negligence of the defendant, for the trial court never ruled on the issue. We turn to the record for the following discussion, conducted out of the presence of the jury, after the trial court had first denied

defendant's counsel permission to ask Mr. Billings his opinion as to speed:

"*The Court:*  Now let me ask you a question * * * you claim that you have a case from some other state which would justify the court in admitting that sort of testimony, is that right?  But you have nothing in Michigan, is that right?

"*Defendant's counsel:*  The law in the State of Michigan, as I was able to find was this.  Now I found absolutely nothing with respect to speed in a criminal action.  But I refer to Gillespie, the 2nd Edition, at Section 510 [discussion of general admissibility of expert opinion, not necessarily as to speed].

"*The Court:*  Have you been able to find in any case in Michigan, *any* case in Michigan, civil or criminal, where any party was allowed to testify as to his opinion as to the speed of a vehicle when he did not see it in motion?

"*Defendant's counsel:*  I will bring it in.
"*The Court:*  You have one?
"*Defendant's counsel:*  Yes, sir.
"*The Court:*  Let's see it.
"*Defendant's counsel:*  I was looking for criminal. I've got criminal from other jurisdictions."

The discussion continues:

"*The Court:*  I would like to see either one of them.
"*Defendant's counsel:*  I will bring them in, sir."

And:

"*The Court:*  I was always of the opinion, and I know there are some cases where the Supreme Court said that you have got to see the car in motion a reasonable distance, in order to qualify yourself to give any opinion as to the speed, I know there is such a case, see.

"*Defendant's counsel:* Absolutely. That is with respect to lay witnesses to give opinion evidence, and I can give you the case on that.

"*The Court:* I don't want to see it, because I know it is there.

"*Defendant's counsel:* Of course this is not a lay witness.

"*The Court:* All right. You show me a case where they permitted anybody, expert or lay, to testify as to the speed of a car where they didn't see the car in motion.

"*Defendant's counsel:* All right.

"*The Court:* How can we get it? That's what I am waiting to see.

"*Defendant's counsel:* Just a moment, I will call my office. I need help."

The court reporter notes that a recess was taken, and that after the recess there was considerable discussion off the record. The trial resumed with an entirely different witness. The record does not show whether counsel for defendant did meet his burden to advise the court and we are bound to that record on this appeal. *People* v. *Fred W. Thomas* (1967), 7 Mich App 519. We cannot say that the trial court erred in his initial, and apparently only, exclusion of the opinion. The court gave counsel a broad opportunity to bring in cases, civil or criminal, and even from other jurisdictions, to assist the court in deciding this issue. Such cases do exist. If further discussion was had on this point, which does not appear in the record, and the court did rule unfavorably on counsel's argument and cases presented, then counsel should have noted this on the record before calling his next witness. We cannot do it for him.

There was a defense counsel for each of the 2 defendants as they were tried jointly. The second issue on appeal arises when defendant called Mr. Bloom, an eyewitness, concerning the speed of Mr.

Mukalla's car.    Counsel for Mr. Mukalla cross-examined Mr. Bloom and the following exchange occurred:

"*Mr. Mukalla's counsel:*   When was the next time anybody approached you about this accident?

"*Mr. Bloom:*   Then the investigators—

"*Mr. Mukalla's counsel:* (*interposing*) 'Investigators'.   I want that out.

"*Defendant's counsel:*   I beg your pardon?

"*Mr. Mukalla's counsel:*   I want that out.

"*Defendant's counsel:*   You want that 'out'?

"*Mr. Mukalla's counsel:*   Yes.   What investigators?

"*Mr. Bloom:*   I don't know what investigators.

"*Defendant's counsel:*   I would like a ruling.

"*The Court:*   Did somebody come and ask you about it?

"*Mr. Bloom:*   Yes, they knocked on my door.   They knocked on all the doors in the apartment, all the tenants.

"*Mr. Mukalla's counsel:*   It was an insurance company investigator wasn't it?

"*Mr. Bloom:*   I don't know.   They didn't identify themselves.

"*Defendant's counsel:*   Your Honor, this was an abortive attempt to create a mistrial, what you just heard come out of that man's mouth.

"*Mr. Mukalla's counsel:*   No.   I am trying to show something a lot worse than a mistrial."

The questioning continued concerning Mr. Bloom's contact with this unnamed person, to wit:

"*Mr. Mukalla's counsel:*   You don't know the company he represents, but you do recall speaking to someone, is that correct?

"*Mr. Bloom:*   Definitely, definitely."

In addition:

"*Mr. Mukalla's counsel:* And you don't recall the name of this particular company, is that true?

"*Defendant's counsel:* (*interposing*) Oh, your Honor!

"*Mr. Bloom:* I don't know what he represented.

"*Defendant's counsel:* Your Honor, I have a motion to make and I think the jury should be excused."

The court discussed this for a moment, not excusing the jury, then proceeded:

"*The Court:* I don't want any further reference made to an insurance company, Counsel.

"*Defendant's counsel:* It is repeated over and over again.

"*The Court:* There is no testimony here that there was any insurance company involved or investigating. The witness said that a man who he didn't know came and asked him about the accident.

"*Mr. Bloom:* That is correct, your Honor."

The questioning then shifted in emphasis as follows:

"*Mr. Mukalla's counsel:* You did see [defendant's counsel], you state, a couple of weeks   *   *   *

"*Mr. Bloom:* (*interposing*) No, a couple of days ago.

"*Mr. Mukalla's counsel:* 'A couple of days ago', and did you see any other attorneys?

"*Mr. Bloom:* Yes, I saw   *   *   *

"*Mr. Mukalla's counsel:* (*interposing*) Let me point to the attorney   *   *   *

"*Defendant's counsel:* (*interposing*) No, wait a minute.

"*Mr. Mukalla's counsel:* (*continuing*) Did you ever see this gentleman before? Do you want to stand up, Mr. Sullivan?

"*Defendant's counsel:* (*interposing*) Your Honor!

"*Mr. Bloom:* Yes.

"*Mr. Mukalla's counsel:* Your answer is 'yes', that's all. That's what I thought.

"*The Court:* Gentlemen, just a minute. I will exclude the answer and the question. It is not proper and it is not material to the trial of this case. Up to now, at least."

Following discussion wherein the court reaffirmed this exclusion, questioning continued:

"*Mr. Mukalla's counsel:* Were you told of any civil cases pending?
"*Defendant's counsel:* I object to this as being immaterial.
"*The Court:* I will sustain the objection."

Counsel retired with the court for a moment, and returned to proceed with the trial.

We have included this testimony in order to clarify the second issue made by defendant on this appeal; that the trial court erred when defendant's motion for a mistrial was not ruled upon when the parties returned to chambers as noted above.

A mistrial is alleged wherein:

(1) The counsel for Mr. Mukalla referred to pending civil litigation;

(2) Testimony was given as to the investigation by an insurance company; and

(3) An inference was made as to wrongdoing by the insurance company and its attorneys in dealing with Mr. Bloom.

These 3 issues as derived from the portion of the transcript concern alleged prejudicial behavior by Mr. Mukalla's counsel, but they do not strike this Court as being of harm to defendant's right to a fair trial. The trial court recognized the ability of Mr. Bloom to wander about in hearsay fields and he effectively reprimanded both the witness and Mr. Mukalla's counsel whenever necessary. That heinous word "insurance" is not so prejudicial in criminal cases that its mere mention will compel

this Court to order new trials where damages are not in issue. These colloquies by the counsel for Mr. Mukalla were not pleasant or conducive to exemplary trial advocacy, but we cannot say that they were injurious or prejudicial to defendant, considering their limited occurrence in a prolonged trial. *Lake Oakland Heights Park Association* v. *Township of Waterford* (1967), 6 Mich App 29.

. Affirmed.

McGREGOR, J. concurred with FITZGERALD, J.

LESINSKI, C. J. (*dissenting*). The record in this case discloses that a qualified expert in the field of mechanical and traffic accident reconstruction engineering was not allowed to give his expert opinion as to the speed of a codefendant's vehicle at the time of the accident.

The expert was not an eyewitness, but he did have the facts presented upon which he could form an expert opinion, namely, the length of the skid marks (69'), the condition of the pavement (dry), the weight of both vehicles (defendant's truck, 10,510 lbs. empty; Mr. Mukalla's automobile, 3,801 lbs.), the additional weight of the defendant's oil tank (approximately 4,500 lbs.), and the fact that the impact of the collision dislodged the oil tank onto the street.

The record discloses that the issue before the trial judge relative to the admission of the expert's testimony centered on the admissibility of expert evidence on the question of speed of a vehicle in a criminal case.

The trial court requested counsel for defendant to provide citations to cases either from Michigan or other jurisdictions. The record does not show that defendant's attorney was able to supply the trial judge with citations to his satisfaction. After defendant's counsel requested help of his office, a recess

was taken. After the recess, a considerable discussion was had off the record, after which the case proceeded without the testimony of the expert witness as to his opinion as to the speed of the codefendant's vehicle, or any objection to the court's refusing to allow it.

Immediately, the failure to make objection to the court's refusal to allow the testimony of the expert witness as to speed raises the issue of whether under such circumstances the issue is properly preserved for appeal.

While appellate courts will not generally review matters on appeal which have not been properly preserved below, they have not hesitated to do so under circumstances in which failure to review the issue could result in a miscarriage of justice. See *People* v. *Elliott* (1948), 322 Mich 313.

The principle that error not properly preserved will not be reviewed is sound. It is primarily intended to protect the trial and avoid unnecessary new trials. It is intended to call error or possible error to the attention of the trial judge with the view of avoiding the error or correcting it if possible during trial or by instructions.

In the instant case, the defendant sought to advise the court of his right to the testimony of the expert. The trial court was fully apprised of the issue. Unfortunately, neither the defendant's lawyer nor the trial judge found the existing law which would have validated the defendant's request. This does not alter the defendant's right to the testimony if it was in order.

Although the record is silent as to the nature of the conversations which were had off the record, the sequence of events leads this writer to conclude that at this point the trial judge must have again affirmed his refusal to allow the expert witness' testimony as

to the speed of the codefendant's vehicle. The writer will not normally indulge in such presumptions, particularly in criminal matters. Here, however, putting all the facts together, one must conclude that resolution of the issues was had off the record and that consequently the defendant's attorney did not register his objection on the record. At this point in the proceedings, it was the trial court's duty to rule on the record upon the matter which was pursued, so as to allow counsel an opportunity to respond on the record to same if he so desired. While normally failure to object can be said to be acquiescence or waiver, under the circumstances of this case this cannot be said to be true.

Further, the writer recognizes that after having pursued the issue, as had the defendant's counsel, that the bar of this State is generally timid to register its objection on the record, for fear of incurring the wrath of the trial judge in the balance of the trial. As unfounded as this reason for this reluctance may be, it is, nonetheless, a reality.

Under all the circumstances of this case, the issue has sufficiently been preserved for appeal.

The propriety of the testimony of the expert next determines its admissibility.

The defendant was on trial for the offense of negligent homicide, CL 1948, § 750.324, as amended by PA 1965, No 38 (Stat Ann 1968 Cum Supp § 28.556). One of the elements which must be proven by the people beyond a reasonable doubt to sustain a conviction under the statute is the negligence of the defendant which resulted in a homicide.

In the case before us, reducing the issue to a minimum, the jury was called upon to determine if the defendant made an improper left turn into approaching traffic.

The defendant's left turn was not a prohibited turn. Defendant's left turn was improper and consequently negligently made only if he interfered with oncoming traffic based on reasonable observations.

Under these circumstances, the issue of speed of the codefendant's car is of primary importance. It is not a question of whether the codefendant was negligent as a result of speeding. However, codefendant's speed is important in determining whether the defendant acted properly under the traffic conditions as they existed.

The point of travel and speed of the codefendant would be indicative of what the defendant observed or should have observed when he formed his judgment to make his turn.

The issue in this case on which the expert's testimony was sought is such that a jury could not have formed a proper judgment without something more to assist it in determining the codefendant's speed.

The established facts which would have formed the basis of the expert opinion were such as move this writer to say that the expert testimony was competent and material to the issue of defendant's negligence and of vital importance to the defendant.

Provided all the facts that are necessary are established and a proper foundation is laid, the use of expert witness' testimony by a defendant in a case such as this is proper and should have been allowed.

In this case we do not resolve the issue of whether the prosecution can initiate the proof of guilt by such evidence.

This case should be reversed and remanded for a new trial.